## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS – EASTERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **)** | |
| | **)** | |
| | **)** | |
| **vs.** | **)** | **19 CR 226-2** |
| | **)** | **Hon. Virginia Kendall** |
| | **)** | |
| | **)** | |
| **JAN KOWALSKI** | **)** | |

### DEFENDANT'S OBJECTIONS TO PRESENTENCE INVESTIGATION REPORT AND SENTENCING MEMORANDUM

The defendant, Jan Kowalski, pursuant to a written plea agreement, pled guilty to concealing assets from a bankruptcy trustee, in violation of Title 18, United States Code, Section 152(1). She is scheduled to be sentenced by this Honorable Court on February 3, 2023. Per Title 18, United States Code, Section 3553(a), the Court shall impose a sentence sufficient, but not greater than necessary, and shall consider the nature and circumstances of the offense and the history and characteristics of the defendant. The defendant respectfully makes the following objections to the Presentence Investigation Report prepared in this case, and asks this Court to consider the below-listed factors when imposing an equitable sentence.

**Base Offense Level – Paragraph 18**

Kowalski agrees with the probation officer's calculations as to a base offense level of 6, pursuant to Section 2B1.1(a)(2) of the Guidelines.

**Specific Offense Characteristic: Loss Amount – Paragraph 19**

1

Kowalski submits that her conduct did not cause a loss of more than

$250,000.  On February 21, 2019, after conducting a trial over four days on the

Trustee's Motion for an Accounting and Turnover of Estate Funds Against Jan

Kowalski and for Rule to Show Cause Against Jan Kowalski and the Debtor (Robert

Kowalski), the bankruptcy judge found that the disputed funds withdrawn from

Jan's IOLTA account were property of Robert's bankruptcy estate.  The bankruptcy

judge then entered an order requiring Jan and Robert to turn over $250,000 to the

Trustee.  *See* Case Number 18-9130, Dkt. 436 and 449.  Accordingly, since the loss

amount did not exceed $250,000, a ten-level increase is appropriate, per Section

2B1.1(b)(1)(F) of the Guidelines.

## Specific Offense Characteristic – Fraud During Bankruptcy Proceeding – Paragraph 20

Kowalski agrees that this two-point enhancement applies, pursuant to

Section 2B1.1(b)(9)(B).

## Specific Offense Characteristic for Sophisticated Means Inapplicable – Paragraph 21

Kowalski objects to a sophisticated means enhancement under Section

2B1.1(b)(10)(C).  The conduct in this case did not amount to especially complex or

intricate actions pertaining to the execution or concealment of the offense.

Kowalski did not know or have reason to know that the trust that she believed her

brother had created was fictitious.  Robert had previously created dozens of

legitimate trusts, so it was reasonable for Jan to believe that the trust used in this

case was likewise kosher.  Moreover, the use of her IOLTA account and creation of

ledgers/retainer agreements were not particularly complex or especially intricate acts, and did not show a greater level of planning or concealment. Rather, that conduct was akin to garden variety fraud. Thus, Jan is similar to the defendant in *United States v. Hart*, 324 F.3d 575, 579-80 (8th Cir. 2003), where the Court found that there was no sophisticated concealment of the offense.

**Role in the Offense – Paragraph 23**

Kowalski represented her brother for less than a week in the bankruptcy case. Her legal skills were not integral to the concealment that occurred, and did not significantly facilitate it. Instead, the bulk of the concealment happened before Jan briefly appeared on her brother's behalf. Jan was not a bankruptcy attorney, and had minimal knowledge of bankruptcy law. As such, the Use of Special Skill enhancement under Section 3B1.3 should not apply.

Alternatively, Kowalski submits that if the Court finds a sophisticated means enhancement to be applicable, imposing a 3B1.3 enhancement would be duplicative and improper.

**Adjusted Offense Level – Paragraph 25**

Under Kowalski's calculations, an adjusted offense level of 18 is proper.

**Acceptance of Responsibility – Paragraphs 27-28**

A three-point decrease for acceptance of responsibility and timely notification is warranted. Kowalski has shown a recognition and affirmative acceptance of responsibility for her actions. She saved the Government and this Court time and

resources by providing timely notification of her intention to plead guilty. A total of three points should be deducted, per Sections 3E1.1(a) and (b).

**Total Offense Level – Paragraph 29**

Level 15 accurately states Kowalski's Total Offense Level.

**Criminal History – Paragraph 40**

Kowalski has zero criminal history points, and is properly placed in criminal history category I.

**Guideline Range – Paragraph 109**

Based on a Criminal History Category of I, and a total offense level of 15, the defense submits that Kowalski's Guideline range of imprisonment should be 18 to 24 months.

**Statutory Provisions – Paragraph 108**

There is a maximum term of five years' imprisonment for a conviction under 18 U.S.C. § 152(1).

**History and Characteristics – Paragraphs 52-69**

Jan was born in Chicago and had a nice childhood. She enjoyed positive relationships with her parents and two brothers while growing up. Her father worked as a civil engineer, and her mom worked at her dad's business. Jan lost her father in 2012 to a heart attack. She remains close with her mom, Rosemary, who resides with Jan in La Grange Highlands. Rosemary has numerous health ailments, including a thyroid disorder and acid reflux disease. In addition,

Rosemary has suffered multiple heart attacks, and underwent a triple bypass surgery. Jan helps care for her mother, who is in her 80s.

Jan did not speak with her brother, Robert, from approximately 1980 until 2015. She has not spoken with her brother, William, since 2005.

Jan has been married two times. She has two children, 30-year-old Daniel and 23-year-old Candyce (Stella). Their father struggled with bi-polar disorder throughout his life. He had been jailed for failing to pay child support multiple times. He passed away in 2020. Her second marriage, to Terence McDonald, ended in 2007. Mr. McDonald was interviewed by probation and reported that Jan is a "great girl." However, Mr. McDonald believes that Jan and her family have mental health problems, and her kids were out of control. Mr. McDonald noted that Jan's children are heavily dependent on her. Without Jan around, Daniel and Stella would unravel.

Daniel has been diagnosed with bi-polar depression and ADHD since the third grade, and Jan is his legal guardian. Daniel has been abusing heroin for several years, and has had multiple stints in inpatient substance abuse treatment. Over the years, Daniel has incurred several drug-related arrests, and has stolen his mother's belongings to sell them to support his drug habit. Daniel has threatened and attempted self-harm in the past. Jan is his sole support and takes care of him as best as she can. Recently, Daniel suffered a near fatal overdose, was hospitalized for weeks, and now experiences delusions.

Stella had her first child in October of 2022. Stella and the baby live with Jan, and Jan is helping her young daughter take care of her newborn son. Jan is typically on baby duty every day until 3pm, when the baby's father gets off of work and assists. Stella has also been treated for bi-polar depression and obsessive-compulsive disorder. She has abused cocaine, marijuana, and alcohol in the past, but has been clean since she became pregnant. Jan enjoys a strong relationship with her daughter and new grandson, Theodore, and relishes her new role as a grandmother.

**Physical Health – Paragraphs 70-79**

Jan was involved in a car accident in 1992, which resulted in Daniel being born early. She had to have an emergency C-section for Stella's birth in 1999, and suffered a damaged bladder. She still experiences urinary tract infections due to that. For the past four years, Jan has experienced left knee pain, and may require surgery for a torn ligament. Records from her orthopedic center confirm that Jan has a torn meniscus, possible Morton's neuroma, and a proximal tibia stress fracture. She has been engaged in physical therapy with the hopes of avoiding surgery.

In addition, Jan takes Levothyroxine for hypothyroidism. She suffers from plantar fasciitis in her right foot. After being attacked by her brother Robert's girlfriend in October of 2020, Jan sustained head and back injuries. She was subsequently treated with pain medication and lidocaine patches. She still has chronic spinal pain from that assault. In February of 2021, Jan was involved in an

automobile accident, during which she fractured a rib and her daughter broke her pelvis in three places. Jan will turn 60 years old this year, and her plethora of health problems require constant attention.

**Mental Health – Paragraphs 80-86**

In or around 1994, Jan first met with a mental health professional to treat depression and adjustment issues. Jan was referred for a mental health assessment in connection with her admission to the Illinois Bar. She attended weekly counseling sessions from 1994 to 2000, was diagnosed with depression, and was prescribed Wellbutrin. She had to stop attending counseling because she could no longer afford to go. In 2007, after years of treatment, Jan was finally admitted to practice law in Illinois.

Following her release from custody in 2019, Jan was referred for mental health treatment due to anxiety and depression. She has been attending weekly counseling sessions at Pillars Community Health, and has been working with the same counselor for the past two and a half years. Jan was admitted to the Rush University Medical Center Psychiatry Department in January of 2020, and was diagnosed with generalized anxiety disorder, a major depressive disorder, and panic attacks. She was then prescribed three psychotropic medications. Jan was admitted again at RUMC Psychiatry in April and June of 2020 after contemplating suicide.

Presently, anxiety and depression persist for Jan. She often lacks enjoyment in life, and has a bleak outlook for her future. She had another suicidal ideation in

7

early 2022, and entered into an agreement with her therapist to go to a suicide prevention center whenever she considered suicide.  Jan continues to attend weekly counseling sessions, and will do so as long as needed.

**Substance Abuse – Paragraphs 87-90**

Jan has had periods of problematic alcohol use in the past, most recently from 2018 to 2021.  She has experimented with illegal drugs, but her use was short-lived.  She has used cannabis regularly to curb panic attacks.

**Education and Special Skills – Paragraphs 90-93**

Jan graduated near the top of her class from Benet Academy in 1981.  Thereafter, she earned a psychology degree from the University of Illinois at Chicago in 1987.  She obtained her law degree from John Marshall Law School in 1992, graduating with high honors.  Since her application to practice law in Illinois was flagged for mental health concerns, Jan had to wait 15 years before becoming an attorney.

**Employment History – Paragraphs 94**

Jan worked as a paralegal for several years while waiting to become an attorney.  From 2007 to 2015, Jan worked for two different law firms as an attorney.  She went out on her own in 2015, focusing mainly on family law, until her license to practice law was suspended in connection with this case.  She has been mostly unemployed for the past three years, subsisting on food stamps and public aid.  She has dabbled in furniture restoration, and was able to sell several pieces on eBay to earn a meager income.  Having lost her law license, Jan cannot find work.

She had to cease employment at Amazon due to her health, as she was unable to physically handle the rigors of the job.

**Restitution – Paragraph 120**

Upon receipt of the Government's victim spreadsheet, the defense will submit its argument as to the proper restitution amount. It should be noted that a judgment in the amount of $250,000 has already been entered against Jan by the bankruptcy court. Thus, the restitution order in this case should take into account that sum, so Jan is not ordered to pay the same money back twice.

**Financial Condition – Paragraphs 100 -107**

Presently, Kowalski's financial condition is precarious, and her net worth is nearly a negative $400,000. Jan has a number of judgments outstanding, and no income to satisfy them.

**Supervised Release Conditions – Pages 26 to 31**

Kowalski has no objection to the mandatory conditions recommended by the probation office.

Kowalski objects to Discretionary Condition 16 in that it permits visits at work.

Kowalski has no objection to the special conditions recommended by the probation office.

**Section 3553 Factors**

Nature and Circumstances of the Offense

9

After not speaking with her brother, Bob, for more than three decades, Jan inopportunely ran into him at the Daley Center in 2015. She agreed to do some work for him, and after some time the two shared office space. When Bob filed for bankruptcy, he eventually enlisted Jan to hide money for him, and she agreed. She knows that concealing those funds was improper, and regrets her poor decision to help her brother. She has lost her law license, and incurred much shame. She also lost her freedom for three and a half months, and presently has no source of income. She realizes the impact this case has had on numerous others.

History and Characteristics of Jan Kowalski

Jan grew up in a stable home and received a high-quality education, but she has a long history of mental health concerns. She has been married twice, and cares for her elderly mother, two adult children, and a grandchild. Those four individuals heavily rely on Jan, and her absence would cause an enormous void in their lives.

Undoubtedly, Kowalski regrets the decisions she made that landed her before this Court for sentencing. She realizes that her mistakes have negatively affected a number of people. Her prosecution in this case has been life-changing. Moving forward, she is committed to learning from her poor choices and living a law-abiding life.

It should be noted that Jan used her law license to serve others. She provided pro bono representation for minority inmates who were seeking suffrage. That case eventually reached the U.S. Supreme Court on appeal. In addition, Jan

wrote several articles for the Chicago Daily Law Bulletin. She also handled a number of child custody cases on a pro bono basis.

Departure Under Section 5H1.6

Jan takes care of her two adult children, who have mental health issues, as well as her elderly mother. Her family responsibilities warrant a departure in this case. Should Jan be sentenced to prison, her family would suffer a direct and substantial loss of the essential caretaking that she provides to them. Considering the unique mental health challenges her children experience, a brand-new grandchild that needs to be raised, and the deteriorating health of her mother, the loss of Jan's caretaking and support substantially exceeds the harm ordinarily incident to incarceration for a similarly situated defendant. There is no reasonably available and effective substitute for Jan's care, and she would not be replaceable. A term of probation would effectively address the loss of caretaking, as Jan would then be able to care for her children, grandchild, and mother, while still being under the supervision of the probation office and subject to the stringent conditions that would be placed on her.

**Prior Custody**

For essentially the same conduct that led to her indictment in this case, Jan spent three and a half months in jail due to contempt orders entered by the bankruptcy court. While in jail in Kendall County, Jan was the victim of an attack by a fellow inmate. That jail time has more than deterred Jan from any future misconduct.

**Conclusion**

Kowalski understands that the sentence must reflect the seriousness of the offense, promote respect for the law, and provide just punishment. Her arrest and conviction have adequately deterred her, and others who may be considering similar acts. The public does not need to be protected from any further crimes by Jan Kowalski. Kowalski is not in need of educational or vocational training.

Restitution will be ordered in this case. Essentially, this Court is left with fashioning a sentence that it feels will fairly punish the offense conduct. Considering Kowalski's history and characteristics, and the defense submits that a sentence of probation is sufficient, but not greater than necessary, to accomplish the sentencing objectives.

WHEREFORE, based on the foregoing, and taking into consideration the unique circumstances of Jan Kowalski and her family, and the nature of Jan's misconduct, the defense respectfully asks this Court for leniency when imposing sentence.

Respectfully submitted,

s/ William S. Stanton

WILLIAM  S. STANTON
53 W. Jackson Blvd., Suite 1062
Chicago, IL 60604
(312) 588-1283