UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JAN R. KOWALSKI | No. 19 CR 226-2<br><br>Honorable Virginia M. Kendall |

**GOVERNMENT'S RESPONSE TO
DEFENDANT'S SENTENCING MEMORANDUM**

The UNITED STATES OF AMERICA, by and through its attorney, JOHN R. LAUSCH, JR., United States Attorney for the Northern District of Illinois, respectfully responds as follows to Defendant Jan R. Kowalski's Objections to Presentence Investigation Report and Sentencing Memorandum (Defendant's Memorandum) [Dkt. 852]:

**A. The Loss Amount Was Not Determined by the Bankruptcy Court's February 21, 2019, Order Requiring Defendant to Turnover $250,000**

The government's proposed loss amount of $357,492.92 was arrived at by analyzing the net amount of bankruptcy estate funds deposited into defendant's IOLTA account. *See* Government's Sentencing Memorandum, Dkt. 853, Exhibits A and B. The government is not aware of any colorable basis to dispute that the financial instruments summarized on Exhibits A and B were: (1) property of the bankruptcy estate, (2) deposited into defendant's IOLTA account as part of the concealment scheme, and (3) not turned over or repaid to the bankruptcy trustee.

Defendant's Memorandum is correct that an order was entered on February 21, 2019, by the bankruptcy court that required defendant and Robert M. Kowalski

to turnover $250,000 to the bankruptcy trustee by March 6, 2019. *See* 2/21/19 Order attached as Exhibit Q. But that order in no way established $250,000 as the total of defendant's liability to the bankruptcy estate. *See id*. The order was entered on the bankruptcy trustee's Motion for Accounting and Turnover of Estate Funds Against Jan Kowalski and Rule to Show Cause Against Jan Kowalski which requested an order requiring: (a) an immediate accounting of the IOLTA account; (b) turnover of all property of the estate, including all funds in the IOLTA account and all assets in the defendant's and Robert M. Kowalski's possession or control; and (c) the defendant and Robert M. Kowalski to show cause why they shouldn't be held in contempt. *See* Case No. 18-9130, Dkt. 315.

While the order does not specifically identify the origin of the $250,000 figure, there is good reason to believe that it is based on defendant's February 20, 2019,

testimony.[1] *See* Exhibit K at 147:5-9.[2] Since the motion requested all estate property in defendant's possession or control, and the defendant testified that approximately $250,000 of the funds previously in her IOLTA account were with an anonymous business partner for a new venture, there is every reason to believe that the bankruptcy court was ordering turnover of an acknowledged asset, and no reason to

---

[1] As noted in the government's Sentencing Memorandum, the defendant refused during her February 20, 2019, testimony to identify the business partner to whom she had purportedly given the $250,000, leading to her incarceration for civil contempt until she provided the identification. Dkt. 853 at 11-12. On March 6, 2019, the defendant identified Lawrence Lis as the business partner to whom she purportedly gave the $250,000, and thereby purged that contempt. *Id*. at 13. Mr. Lis appeared and testified on March 20, 2019, that he was not involved in a business venture with defendant and had not received $250,000 from her. *Id*. at 14. On April 3, 2019, defendant reappeared before the bankruptcy court and again testified that she had given $250,000 to Lis, but now added that he had returned it to her in February 2019 and that it was in a lockbox in her office on the morning of February 20, 2019, but had thereafter been stolen. *Id*. If this testimony were true, it would raise the question of why did defendant not just say on February 20, 2019, that she had the funds in her office when asked their location, rather than go to jail for contempt to protect the identity of a purported business partner who was only an intermediate transferee of the funds, and who no longer held them. The reason, of course, is that the defendant was just lying more to try and cover her previous lies. The April 3, 2019 "lockbox" testimony is unambiguously irreconcilable with the February 20, 2019, testimony, as defendant was asked on that earlier date:

> Q. And where is the $250,000 currently located?
> A. I don't know.
> Q. How do you not know?
> A. It was tendered as a capital investment with my partner. Not with my partner. With my client.

Exhibit K at 151:14-20. Notably, the April 3 testimony was delivered after a period of incarceration for contempt and *after defendant was indicted in this case.*

[2] References to Exhibits A – P refer to the exhibits accompanying the Government's Sentencing Memorandum at Dkt. 853.

believe that the bankruptcy court was in any way attempting to quantify the defendant's total liability to the bankruptcy estate.

### B. The Sophisticated Means Enhancement Should Apply

Defendant's contention that the "use of her IOLTA account and creation of ledgers/retainer agreements were not particularly complex or especially intricate acts" (Defendant's Memorandum at 2-3) is not well founded. To be clear, the ledgers and retainer agreements were fraudulent documents that purported to evidence events, circumstances, and relationships that did not exist. The retention agreements purported to use provisions such as flat fee structures that would provide a basis for claiming a large amount due and owing without the need to fabricate additional time records. *See, e.g.*, Exhibit I at 15:12-20:6 (defendant narrating the origin of a purported engagement agreement and invoice). Even if defendant's assertion that she did not know her brother's trust was fictitious were accurate, it does not mitigate the other sophisticated fraudulent acts she specifically engaged in.

The application note to § 2B1.1(b)(10)(C) does not provide an exhaustive list of what constitutes sophisticated means, and a wide range of conduct can be deemed sophisticated. *See United States v. Allan*, 513 F.3d 712, 715 (7th Cir. 2008). In determining whether the sophisticated means enhancement is applicable, the Seventh Circuit has instructed that "the level of planning or concealment in relation to typical fraud of its kind is determinative," and that it does not require brilliance, just "a greater level of planning than the usual fraud case." *United States v. Lundberg*, 990 F.3d 1087, 1097 (7th Cir. 2021) (internal quotations and brackets

4

omitted.) The "sophistication" is in reference to "efforts at concealment that go beyond (not necessarily far beyond, for it is only a two-level enhancement …) the concealment inherent in the fraud." *Id.* (internal quotations and brackets omitted.) In *Lundberg*, the defendant altered her boyfriend's tax returns and paystubs so that she could use the documents to lease a home she would not have otherwise qualified for, and she then paid for the lease with funds stolen from her boyfriend's employer. In affirming the district court's application of the sophisticated means enhancement, the Seventh Circuit noted that the defendant's actions went "above and beyond the activity inherent in wire fraud." *Id.*

The defendant contends that her actions are similar to those at issue in *United States v. Hart*, 324 F.3d 575, 579 (8th Cir. 2003), but the factual premise of that case is fundamentally different from what happened here. *Hart* involved a defendant who *failed to keep records*, and the Eighth Circuit noted that it "could think of no less sophisticated means of concealing a tax evasion offense than by simply failing to keep records of personal income." *Id.* Here, the defendant *fabricated records* to try and hide assets which she had already concealed from the bankruptcy trustee.

In this case, the defendant's efforts went substantially beyond what was required for fraudulently concealing assets of the bankruptcy estate. She didn't just take $357,492.92 and claim it as her own or put it under her mattress. She deposited it into her attorney trust account that she could thereafter try and shield visibility into with claims of attorney-client privilege. *See e.g.*, Case No. 18-9130, Dkt. 327, Motion of Attorney Jan Kowalski to Quash Subpoena or Summons Directed to Her

5

IOLTA Account; Exhibit K at 157-158 (invoking attorney-client privilege to avoid acknowledging wire transfer for purchase of Oak Lawn Property). The defendant cycled concealed funds through transactions before ultimately withdrawing the remaining cash from the account. *See* Exhibits F and G. When the IOLTA account records were obtained by the trustee and he sought an accounting and turnover, she fabricated retention agreements and ledgers that she could use as props to try and convince the bankruptcy court that the concealed funds were legitimately hers. *See* Exhibits H-O.

The defendant's actions in this case were not "garden variety" as she contends. (Defendant's Memorandum at 3.) They were sophisticated in that they involved a far greater level of planning and effort than what is required to commit a violation of 18 U.S.C. § 152(1).

### C. Defendant's Use of Her Position as an Attorney Warrants Enhancement Under § 3B1.3

For the reasons stated in the Government's Sentencing Memorandum the § 3B1.3 enhancement should apply. It is neither "duplicative [nor] improper" to apply enhancements under both § 3B1.3 and § 2B1.1(b)(10)(C). In *United States v. Vizcarra*, 668 F.3d 516, 519-21 (7th Cir. 2012), the Seventh Circuit expressly held "that double counting is generally permissible unless the text of the guidelines expressly prohibits it." The text of the guidelines do not prohibit application of § 3B1.3 and § 2B1.1(b)(10)(C). And, applied to the facts of this case, the two enhancements are not particularly duplicative. Defendant could have done *some* of what she did with respect to the concealment without being an attorney, but she could not have done everything

she did without using her position of trust. She used her position as an officer of the court as a vehicle to, among other things, make false representations in a written pleading (*see* Exhibit H), and to try and keep the trustee from using her IOLTA account records (*see* motion to quash, Case No. 18-9130, Dkt. 327), in an attempt to hide her ongoing concealment of estate assets. Defendant's use of her position of trust warrants a 2-level enhancement under § 3B1.3.

### D. Bankruptcy Court Judgments Do Not Mitigate Restitution

Defendant argues that any restitution order should be reduced by the $250,000 judgment entered against her by the bankruptcy court. Dkt. 852 at 9. Such a reduction would be inappropriate. Criminal restitution can be reduced by the "value (as of the date the property is returned) of any part of the property that is returned" prior to sentencing. 18 U.S.C. § 3663A(b)(1)(B)(ii). But the property hidden by defendant and her brother is still missing – the bankruptcy court has not recovered the funds she helped conceal, nor has she satisfied her civil judgment.

Therefore, restitution should not be reduced by the amount of an outstanding, unpaid bankruptcy court judgment against her. *See, e.g., United States v. Savoie,* 985 F.2d 612, 619 (1st Cir. 1993) (restitution order should not be reduced by unpaid civil judgment obtained by victim). After defendant makes restitution payments as ordered by this Court, she can petition the bankruptcy court to reduce her civil judgment.

                                                Respectfully submitted,

                                                JOHN R. LAUSCH, JR.
                                                United States Attorney

By:   <u>/s/ *Michelle Petersen*</u>
JEREMY DANIEL
BRIAN NETOLS
MICHELLE PETERSEN
KRISTIN PINKSTON
Assistants United States Attorneys
JEFFREY SNELL
Special Assistant United States Attorney
219 South Dearborn Street, 5th Floor
Chicago, IL 60604

Date Submitted: January 27, 2023